LA VALLETTE v. BOOTH.

(Filed September 23, 1902.)

CONTRACTS—*Breach—Sales—Damages.*

> Where a person fails to deliver oysters according to contract, he is not entitled to damages for a subsequent failure of other party to comply with contract.

ACTION by A. T. La Vallette and others against A. Booth & Company, heard by Judge *Francis D. Winston* and a jury,

at Spring Term, 1902, of the Superior Court of CARTERET County. From judgment for the plaintiffs, the defendant appealed.

*A. D. Ward,* for the plaintiffs.
*D. L. Ward,* for the defendants.

CLARK, J.   The plaintiffs allege that the defendants contracted to take the output of their oyster factory at a specified price up to March, 1900, but that on 25 January the defendants refused to take more oysters, and plaintiffs sue for the damages sustained by such breach of contract.

The written contract was, however, put in evidence, and showed that the agreement, dated 16 November, 1899, was that the plaintiffs were to furnish 1,000 gallons per day, of standards and selects.   There was no evidence of any subsequent change in the terms of this contract.   It was in evidence by plaintiffs that the amount sent on ranged from 10 gallons per day to about 300, on five days only as much as 500 gallons, the highest being 648 gallons on 26 January, after the order to stop shipping.   The letters of plaintiffs were in evidence, to-wit, letter 7 January, 1900, in which they acknowledged they had not been able to ship the defendants 1,000 gallons per day, because the oysters had not come, and they could ship only a very few; another letter, dated 25 January, the very day of the alleged breach, in which they say, "We can not expect you to take 1,000 gallons weather like this, as we could not give them to you when it was cold"; and still another letter, 3 February, 1900, in which they say, "I know we did not do as we intended, as it was *impossible to come up to our agreement,* as we could not get the oysters"; and a letter of 19 February, 1900, in which plaintiffs say, "As we failed, on our part, to give you the quantity, as stated in the conditions of the order, we

could make no complaint more than to ask you to renew your order."

His Honor erred in refusing defendants' prayer to instruct the jury that upon the above admissions they should answer the second issue "No." The uncontradicted evidence shows that the contract was broken by the plaintiffs the very first day, and was not lived up to by them a single day thereafter. Not having furnished the oysters during cold weather, they could not call upon the defendants to take the oysters when the weather had become warmer and oysters less salable. The plaintiffs not having kept the contract themselves in any respect, either as to quantity or quality (for in the letter of 3 February they admit they had shipped defendants some as good and some as bad oysters "as ever did come out of North Carolina"), can not call upon defendants to observe a contract which they themselves had never kept. The contract of 16 November, 1899, was drawn up and sent plaintiffs by defendants, and though the former merely signed but did not return it, if this was not an acceptance, there was no contract at all.

The third exception is also well taken. There was no evidence to sustain the assessment of damages for breach of contract by defendants, when the contract had been totally disregarded and broken by the plaintiffs themselves. The plaintiffs were only entitled to pay for the oysters actually shipped to and accepted by defendants, and that has been paid.

Error.